IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

VANESSA KOWALYK,

        Plaintiff,

vs.

THE COUNTY COMMISSION OF
HANCOCK COUNTY; SHERIFF MIKE
WHITE, individually and in his capacity as
Sheriff of Hancock County; and MARK
ALAN SMITH, individually and in his
capacity as Deputy Sheriff of Hancock
County,

        Defendants.

CIVIL ACTION NO. 5:08-CV-181

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Now come defendants, Sheriff Mike White and the County Commission of Hancock County by and through undersigned counsel David L. Wyant, Esq., and the law firm of Bailey & Wyant P.L.L.C. and in support of their Motion for Summary Judgment state as follows:

### I.    BRIEF FACTUAL HISTORY

Former Deputy Mark Alan Smith became employed as a Deputy Sheriff for Hancock County in January of 1989 after serving as a patrolman for the City of Chester for approximately six years. See: *Deposition of Mark Alan Smith, page 9, lines 9-10 and 22-25 attached hereto as Exhibit A.* On December 13, 2006 at approximately 3:00 a.m., Mark Alan Smith, observed a vehicle drifting over the yellow line and not maintaining a steady speed. See: *Hancock County Sheriff's Department Taped Interview with Mark Alan Smith, January 5, 2007 attached hereto as Exhibit B.* Smith initiated a traffic stop and then performed some sobriety field tests on the plaintiff, Vanessa Kowalyk. Some of the tests she failed and others she passed. See: *Exhibit B, page 4.* He then requested that she sit in his vehicle so that he could determine if she smelled of an alcoholic beverage. See: *Exhibit B, page 5.* Determining that she was not under the influence of alcohol, Smith testified he gave her back her driver's license and registration and told her that she was not going to be arrested. The plaintiff then began to get out of the cruiser. See: *Exhibit*

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

*B, page 5.* Smith, against department policies and procedures, requested that the plaintiff show him what she "showed the guys at the bar."[1] See: *Exhibit B, page 5.* Ms. Kowalyk then pulled up her shirt and at some point pulled her pants down. According to Smith, the plaintiff then made a suggestion that he come to her place of employment, Fantasies Gentlemen's Club, where they could engage in sexual activity in the Champagne Room. In response, Smith suggested the two engage in such activity at that time. See: *Exhibit B, page 5.* The plaintiff then left the police car, walked to her own vehicle, got her purse, locked her car, and came back to the cruiser. See: *Exhibit B, page 5.* Smith testified that it was the plaintiff who offered to engage in sexual activity with him. See: *Exhibit A, page 45, lines 15-17.* Smith also stated that once she left the vehicle, he did not believe Ms. Kowalyk would return to the police car, but she did. See: *Exhibit A, page 46, lines 5-8.*

When the plaintiff returned to his vehicle, Smith falsely reported to dispatch that he was with a disabled vehicle and the party was going to receive a ride from a third party. See: *Exhibit B, page 11.* Smith and the plaintiff traveled to a cemetery where Smith began to engage in oral sexual conduct with the plaintiff. At a point during the activity, plaintiff declined to continue in the sexual activity. According to Smith, he told the plaintiff that they were not going to do anything that she did not want to do and he drove her back to her vehicle. He watched her pull out and then he pulled out and continued his shift. See: *Exhibit B.*

Thereafter, the plaintiff traveled home, only stopping to wipe mascara from her face. See: *Deposition of Vanessa Kowalyk, page 107, lines 1-2 attached hereto as Exhibit C.* At her home, her mother came over and the two had breakfast and discussed what they should do. See: *Exhibit C, page 110, lines 1-2.* Thereafter, she discussed the situation with her uncle. A few hours later, her uncle called her back and told her he had been in touch with a lawyer and that she should go to the hospital right away. See: *Exhibit C, page 113, lines 1-3.* At the hospital, the plaintiff spoke to local police who then called the West Virginia State Police.

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

---

[1] The plaintiff was a dancer at Fantasies Gentlemen's Club.

2

As a result of the West Virginia State Police investigation, the defendant was charged criminally. On February 14, 2008, Mark Alan Smith entered a plea of no contest to the misdemeanor offense of sexual abuse in the second degree. See: *February 14, 2008 Order attached hereto as Exhibit D*.

Immediately upon learning of the incident from the West Virginia State Police on December 16, 2006, Sheriff White ordered Smith to report to the State Police Barracks where he was interviewed by the State Police. While there, Sheriff White took possession of Smith's sidearm and placed him on administrative leave. See: *Deposition of Sheriff Michael White, pages 92 and 93 attached hereto as Exhibit E*. On December 18, 2006, Sheriff Michael S. White informed Smith in writing that he was on administrative leave and that an internal investigation into the matter would be conducted. See: *December 18, 2006 letter attached hereto as Exhibit F*. After performing an investigation, Sheriff White informed Smith he was going to recommend discharge for Smith and informed Smith of the nine policies and procedures of the Sheriff's Office that his conduct violated. See: *April 6, 2007 letter attached hereto as Exhibit G*. On April 26, 2007, Mark Alan Smith resigned his position from the Hancock County Sheriff's Office. See: *Letter of Mark Alan Smith attached hereto as Exhibit H*. This resignation was accepted by the Sheriff on April 30, 2007. See: *Sheriff's letter to Hancock County Commission President attached hereto as Exhibit I*.

Throughout this lengthy discovery process, the plaintiff has provided no information or evidence whatsoever to sustain her claims against these defendants, Sheriff Mike White and the County Commission of Hancock County. Therefore, there is no material issue of fact and these defendants are entitled to summary judgment as a matter of law.

## II. STANDARD OF LAW

Rule 56(c) of the Federal Rules of Civil Procedure authorize Summary Judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby,

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); F.R.C.P. 56(c). "Summary Judgment is available only in those cases where it is not only perfectly clear that there exists no dispute as to the facts, but also where there is no dispute as to conclusions or inferences which may reasonably be drawn therefrom". Pauley v. Combustion Eng'g, Inc., 528 F. Supp. 759 (S.D. W. Va. 1981); Prete v. Royal Globe Ins. Co., 533 F. Supp. 332 (N.D. W. Va. 1982).

"Sufficiency of evidence to create an issue of fact for jury is solely a question of law". Houston v. Reich, 939 F.2d 883 (10th Cir. 1991). The Court does not have to accept unwarranted inferences or unreasonable conclusions, or arguments as true factual allegations. Eastern Shore Markets, Inc. v. J.D. Associates, LTD, 213 F.3d 175 (4th Cir. 2000), citing 5A Wright and Miller, Federal Practice and Procedure § 1357 (2d.ED. 1998 and 1999 Supp.).

### III.    ARGUMENT

The plaintiff's Amended Complaint alleges 42 USCS § 1983 claims for deliberate indifference shown by policies and customs of the Sheriff's Department as well as the Sheriff Department's hiring, training and supervision of former Deputy Smith. The plaintiff also is asserting state law negligence claims of hiring, retention and training. See: Tennessee v. Garner, 417 U.S. 1, 105 S. Ct. 1694 (1995). Through the lengthy discovery period in this matter, the plaintiff has failed to establish any evidence to support any of these claims. "42 USCS § 1983 does not impose liability on a municipality unless deliberate action attributable to the municipality itself is the moving force behind the plaintiff's deprivation of federal rights." Monell v. New York City Department of Social Services, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978). The plaintiff has established no such evidence in this matter.

Further, the plaintiff has failed to establish that the policies, customs, hiring practices, or the training and supervision of employees led to the alleged constitutional violation. As a result and as shown below, Sheriff White and the County Commission of Hancock County are entitled to summary judgment.

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

4

### A. The plaintiff has no evidence of a policy or custom that caused the plaintiff's alleged constitutional violation.

The plaintiff asserts that the defendants had a responsibility and duty to "promulgate and implement policies and procedures" that would protect the plaintiff in this case.[2] It is well settled that a municipality may be held liable for the actions of an officer only when "official policy" causes the constitutional violation. See: Monell v. Department of Social Services, 436 U.S. 658, 691, 694, 98 S. Ct. 2018 (1978).[3] A plaintiff must "identify a municipal policy or custom" that caused the injury. Board of County Com'rs v. Brown, 520 U.S. 397, 117 S. Ct. 1382 (1997). There is simply no evidence that the actions of Mark Alan Smith occurred because of some formal policy or custom authorized by the County Commission for Hancock County or Sheriff White that led to a violation of Ms. Kowalyk's constitutional rights. "It is only when the execution of the government's policy or custom...inflicts the injury that the municipality may be held liable under § 1983." City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989). When the actions of Mark Alan Smith were discovered by the Sheriff, the Sheriff was able to determine that Mark Alan Smith's actions violated at least nine policies of the Hancock County Sheriff's Office. See: *Exhibit G*. The general orders that Mark Smith violated included:

1. General Order # 12, conduct unbecoming an officer
2. General Order # 13, conformance to laws
3. General Order # 35, immoral conduct
4. General Order # 44, neglect of duty
5. General Order # 47, position of abuse
6. General Order # 48, prisoner/persons in custody, treatment of
7. General Order # 49, process, abuse of
8. General Order # 53, radio contact with vehicles and dispatch

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

---

[2] See: Plaintiff's Amended Complaint, paragraph 10.

[3] "The Monell standard governs a County's § 1983 liability." McMillian v. Monroe County, 520 U.S. 781, 783, 117 S. Ct. 1734 (1997).

   9.  General Order # 64, vehicles and equipment, use of.

By his signature, Mark Alan Smith recognized that he had received the general orders and supplements thereto. <u>See</u>: *General Orders Supplementation Signature Page attached hereto as Exhibit J.*

Mark Smith testified that he definitely knew he had violated the Hancock County Sheriff's Office's policies when asked:

> Q. Which policies did you think you had violated?
> A. The one about having unauthorized people in your car, having sex on duty.

<u>See</u>: *Exhibit A, page 49, lines 17-21.* Mark Alan Smith clearly understood his behavior and having sex on duty was against the policies of Sheriff Mike White and the Hancock County Commission.

The plaintiff further alleges that deputies used their authority to force or attempt to force dancers to perform sexual favors and there was an unwritten custom or practice to "look the other way" and this alleged practice was "well known."[4] In a civil action under 42 USCS § 1983 "a custom for purposes of <u>Monell</u> liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of law must include deeply embedded traditional ways of carrying out policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a custom is a legal institution not memorialized by written law." <u>Felciano v. City of Cleveland</u>, 988 F.2d 649, 655 (6th Cir.); <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 823, 105 S. Ct. 2427 (1985). <u>See also</u>: <u>Carter v. Morris</u>, 164 F.3d 215 (4th Cir. 1999); <u>Spell v. McDaniel</u>, 824 F.2d 138 (4th Cir. 1987). There is absolutely no evidence of any custom or usage with the force of law that led to the plaintiff's alleged constitutional violations. In this case, there simply is no reason whatsoever to hold the County Commission of Hancock County or Sheriff White responsible for the actions of Mark Smith. The plaintiff must establish an unwritten policy, practice or custom condoning the alleged behavior to show a policy or custom existed.

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

---

[4]  <u>See</u>: Plaintiff's Amended Complaint, paragraph 23.

6

See: Thomas v. City of Chattanooga, 398 F.3d 426 (6th Cir. 2005). "Locating a policy insures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Board of County Comm'rs v. Brown, 520 U.S. 397, 403-04, 117 S. Ct. 1382 (1997).

There is no evidence whatsoever that there was any unspoken or unwritten custom, policy or procedure to look the other way when officers "would take dancers on dates and under the pressure of their uniform, would force or attempt to force dancers to perform sexual favors."[5] In fact, the plaintiff herself testified that she is aware of no information where Sheriff White knew that this incident was going to happen. See: *Exhibit C, page 68, lines 19-23*. The plaintiff is also aware of no other incidents where Smith pulled over exotic dancers. See: *Exhibit C, page 69, lines 5-7*. She was unaware of any other exotic dancer ever being stopped by a Hancock County Deputy Sheriff other than this particular incident. See: *Exhibit C, page 63, lines 6-13*. She was unaware of any exotic dancers who "dated" Deputy Sheriffs. See: *Exhibit C, page 63, lines 22-24*.

After the incident between Kowalyk and Smith came to his attention, Sheriff White began an investigation to determine if anything else like this was going on and the results were there was no other similar incidents discovered. See: *Exhibit E, page 102, lines 20-25 and page 103, lines 1-14*. The plaintiff's cousin and witness Stacy Kowalyk also worked at the same establishment as an exotic dancer. At her deposition, Stacy Kowalyk testified that she was unaware of any exotic dancers being stopped by a Deputy Sheriff and she was unaware of any information that Sheriff White knew that law enforcement officers had assaulted any exotic dancers. See: *Deposition of Stacy Kowalyk attached hereto as Exhibit K, page 13, lines 1-18*. Stacy Kowalyk testified that she never saw any law enforcement officers in uniform in Fantasies. See: *Exhibit K, page 11, lines 3-5*. She is aware of no dancers having confrontations with Deputies. See: *Exhibit K, page*

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

---

[5] See: Plaintiff's Amended Complaint, paragraph 23.

7

*12, lines 5-7.* There simply is no widespread practice that, although not authorized by written law or policy, is so permanent or well settled as to constitute a custom or policy. See: McTigue v. City of Chicago, 60 F.3d 381 (7th Cir. 1995). See also: Riddick v. School Board, 238 F.3d 518 (4th Cir. 2000). The plaintiff is unable to establish an official policy or custom. The plaintiff is unable to establish a policy or custom of inaction or looking the other way. There was no widespread practice so well settled as to constitute custom or policy. Therefore, the plaintiff's claim against the County Commission of Hancock County and Sheriff White must fail and these defendants are entitled to summary judgment.

### B. The plaintiff has failed to establish these defendants failed to train Smith which led directly to her alleged constitutional violation.

The plaintiff also is alleging these defendants failed to hire, train, and supervise Smith.[6] Three requirements must be met before a government entity's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens. "First, the plaintiff must show that a policymaker knows to a moral certainty that his employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of the citizen's constitutional rights." Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694 (1985). See also: Rowell v. City of Hickory, 341 Fed. Appx. 912 (4th Cir. 2009); Riddick v. School Board, 238 F.3d 518 (4th Cir. 2000) and Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987). There is simply no evidence whatsoever that Sheriff Mike White or the County Commission of Hancock County knew with certainty that Mark Alan Smith would confront this type of situation.

There is no evidence that Smith had in the past, while on duty, requested or engaged in sexual conduct with a citizen. In fact, Mark Smith denied that he has ever engaged in similar

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

---

[6] See: Plaintiff's Amended Complaint, paragraph 10.

8

conduct before. See: *Exhibit A, page 46, lines 4-7*. Smith admits that he knew that it was a violation of policy to have sexual contact while on duty. As a result, the plaintiff has failed to show that the Sheriff as a policy holder knew to a moral certainty that the employee will confront the given situation and secondly the plaintiff has failed to show that the situation presents the employee with a difficult choice of the sort which training or supervision will make less difficult or that there is a history of the employee's mishandling of the situation. The facts simply do not exist as to these requirements of the deliberate indifference. See: *Exhibit A, page 49, lines 17-21*. Further, there simply is no evidence whatsoever that Smith's alleged "wrong choice" would frequently cause deprivation of a citizen's constitutional rights. See: Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694 (1985).

Additionally, the claim of lack of training by the County and Sheriff also is without factual support.

There is no lack of training that led to the actions of Mark Smith.

> "Only where a failure to train reflects a deliberate or conscious choice by the municipality can the failure be properly thought of as actionable city policy. Monell will not be satisfied by a mere allegation that a training program represents a policy for which the city is responsible. Rather, the focus must be on whether the program is adequate to the tasks the particular employee must perform, and if it is not, on whether such inadequate training can justifiably be said to represent city policy. Moreover, the identified deficiency in the training program must be closely related to the ultimate injury."

City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197 (1989).

Courts presented with similar complaints of sexual assault have uniformly found that training or its absence does not cause the plaintiff's injuries. See: Andrews v. Fowler, 98 F.3d 1069, 1077 (8th Cir. 1996); Mize v. City of Flint, 2009 U.S. Dist. LEXIS 53319 (E.D. Mich. June 24, 2009); Doe v. Claiborne County, 103 F.3d 495 (6th Cir. 1996). "In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women." Andrews v. Fowler, 98 F.3d 1069, 1077 (8th Cir. 1996). "Refraining from raping women in police custody is so obvious that even if a city were silent about such conduct, it would not give rise to a constitutional violation."

Mize v. City of Flint, 2009 U.S. Dist. LEXIS 45297 (E.D. Mich. June 24, 2009) affirmed 2010 U.S. App. LEXIS 8650 (6th Cir. Mich. April 26, 2010). See also: Rapala v. Zaabel, 1992 U.S. Dist. LEXIS 2331 (N.D. Ill. March 2, 1992); Rogers v. City of Little Rock, 152 F.3d 790 (8th Cir. 1998).

The manner in which a political subdivision's police force is trained "is necessarily a matter of policy within the meaning of Monell." See also: Spell, 824 F.2d at 1389. To establish a claim under § 1983 for failure to train, the plaintiff must show that the "municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants." City of Canton v. Harris, 489 U.S. 378, 381, 109 S. Ct. 1197 (1989). "Mere negligence is insufficient to impose § 1983 liability on a municipality for alleged failure to train." *Id,* see also: Spell, 824 F.2d at 1390. Deliberate indifference is shown only "if, in the light of the duties assigned to the specific officers or employees, the need for more or different training is...obvious, and the inadequacy is...likely to result in the violation of constitutional rights." Jordan ex rel Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994). The plaintiff must also show that the inadequate training was the proximate cause of the plaintiff's deprivation of rights. See: *Id* and Spell at 824 F.2d at 1390. In this case, the plaintiff can show no lack of training that led to the alleged violations of the plaintiff's constitutional rights. Mark Smith graduated from the West Virginia State Police Academy. See: *Exhibit A, page 10, lines 1-3.* Throughout his career as a deputy sheriff, Smith received ongoing and yearly training. See: *Training Certificates attached hereto as Exhibit L.* This training included attending the sexual assault symposium on April 7, 2006, a domestic violence training, drug abuse resistance education training (DARE) and a training on interview and interrogation techniques. See: *Exhibit L.* There is simply no evidence whatsoever that there was a failure to train Mark Smith. "Only where a failure to train reflects a deliberate or conscious choice by a municipality...can a city be liable for such a failure under § 1983." City of Canton v. Harris, 489 U.S. 378, 388-389, 109 S. Ct. 1197 (1989). There is no evidence whatsoever that a "deliberate or conscious choice" led to Smith's failure to follow the

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

Sheriff Department's policies and procedures. *Id.*

Importantly, it is not enough for a plaintiff to simply show "that (her) injury could have been avoided if the officer had had more or better training." Mayo v. Macomb County, 183 F.3d 554, 558 (6th Cir. 1990). "The need for more or different training must be obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989); Board of County Comm'rs v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382 (1997). The plaintiff has failed to show that "the specific violation is almost bound to happen, sooner or later, rather than merely likely to happen in the long run." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). In this case, the uncontroverted evidence is that Deputy Smith knew that it was against policy to have the sexual contact with the plaintiff. It is also uncontradicted that no such similar activities had ever been recorded or reported at the Hancock County Sheriff Department. In these circumstances, there can be no issue of fact regarding training that would lead to a claim of deliberate indifference. Thus, these defendants are entitled to summary judgment.

### C. These defendants did not fail to supervise Smith that resulted in the plaintiff suffering an alleged constitutional violation.

Further, it is not plainly obvious that any lack of supervision of Smith would lead to a sexual assault of the plaintiff as alleged by plaintiff in the Amended Complaint.[7] There is simply no evidence in this matter to make it plainly obvious that any result of lack of supervision of Smith would result in a sexual assault on the plaintiff. See: Gregory v. City of Louisville, 44 F.3d 725, 725-53 (6th Cir. 2006). In this case, Smith, as the most senior officer on duty, was the supervisor on the day of the incident. Even on this occasion, but for the fact that Smith chose to violate policies, supervision was adequate. Sheriff White testified that on any given shift, there is an officer in charge. On day shift, the Sheriff himself as well as a detective and a sergeant are on

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

---

[7] See: Plaintiff's Amended Complaint, paragraph 10.

11

duty supervising deputies. See: *Exhibit E, pages 27, 28 and 29.* On this evening, Smith, as the senior officer on the shift, was serving as the supervisor in Sgt. Mark Cowden's absence. Smith had been employed with the Sheriff's Office for more than 15 years with no similar complaints prior to this incident. See: *Exhibit A, page 9, lines 9-10.* Therefore, the plaintiff cannot prove her claim of lack of supervision. The Sheriff himself could always be called out and there is usually a sergeant in charge of each shift. "A single act or isolated incident are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." Miller v. Anderson, 494 F. Supp. 640 (N.D. W. Va. October 2, 1984) quoting Bowen v. Watkins, 669 F.2d 979, 988-89 (5th Cir. 1982). In this case, the Sheriff knew of no widespread problems. See: *Exhibit E, pages 102 and 103.* The plaintiff has no evidence whatsoever of any widespread abuse as to impute liability for purposes of § 1983. See: *Exhibit C, page 63 and page 68, lines 15-18.* The Supreme Court has specifically cautioned against imposing municipal liability in such cases. See: City of Canton, 489 U.S. at 391-92, which stated "to adopt lesser standards of fault and causation would open municipality's to unprecedented liability under § 1983. In virtually every instance, where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident. Thus, permitting cases against cities for failure to train employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability...". Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S. Ct. 2427 (1985).

In order to allow the plaintiff's claim to proceed to trial, this Court is being requested to accept as a viable legal theory that any time a law enforcement officer is unsupervised, it is plainly obvious that a rape could occur. This is asserting *respondeat superior* liability against the county employer, which is improper. The Court simply cannot allow this matter to proceed to trial and must grant the defendants' Motion for Summary Judgment.

**D.** **These defendants did not fail to properly hire Smith which would result in the plaintiff's alleged constitutional violation.**

Additionally, the Sheriff cannot be held liable for improperly hiring Mark Smith. A county

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

12

or a sheriff is not properly held liable for a plaintiff's injury based on a single decision to hire the officer who caused the injuries. See: Board of County Comm'rs v. Brown, 420 U.S. 397, 117 S. Ct. 1382 (1997). In the Hancock County Sheriff's Department, and specifically to Mark Smith, deputy sheriffs must complete a civil service examination as a top candidate. Then, the candidate must pass a physical and psychological examination. Mark Smith met these standards. See: *Medical Certificate and Appendix IV attached hereto as Exhibit M.* "Only where adequate scrutiny of an applicant's background would lead the reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute deliberate indifference." Bryan County v. Brown, 520 U.S. 397, 411, 117 S. Ct. 1382 (1997). The plaintiff cannot show in this matter that the hiring of Smith constituted deliberate indifference. As a result, the plaintiff cannot establish liability on the County Commission of Hancock County or Sheriff White with regard to § 1983 liability for hiring Mark Smith.

### E. The plaintiff has failed to establish any evidence to support her state law claims of negligent hiring or retention.

For the same reasons as stated above, the plaintiff cannot prove her state law claims of negligent hiring and negligent retention against Sheriff White and the County Commission of Hancock County. No evidence has been developed to substantiate the same. The test to determine whether an employer should be held liable for negligent hiring or retention is:

> "When the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis-a-vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?"

McCormick v. W. Va. Dep't of Pub. Safety, 202 W. Va. 189, 503 S.E.2d 502, 506 (W. Va. 1998), quoting, State ex rel W. Va. State Police v. Taylor, 201 W. Va. 554, 499 S.E.2d 283, 289 (1997).

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

An employer must "use reasonable care in the selection and retention of its agents and employees." Atkins v. St. Francis Hospital, 149 W. Va. 705, 709, 143 S.E.2d 154 (1965). There is no evidence that the County Commission of Hancock County or Sheriff White knew or should have known that Mark Smith was at risk to sexually assault a female citizen. See: McCormick v. W. Va. Dep't of Pub. Safety, 202 W. Va. 189, 503 S.E.2d 502 (1998). In fact, Mark Smith denied any other similar incident. See: *Exhibit A, page 46, lines 4-7*. During his many years of employment as a deputy sheriff, there was only one time Smith was reprimanded and the situation was very different than the case at bar. In that case, Smith was reprimanded for not arresting a person. See: *Exhibit A, page 39, lines 1-20*.

Liability is only "predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of employment, it should have been foreseeable that the hired individual posed a threat of injury to others." Ponpicas v. K. M. S. Invs., 331 N.W.2d 907 (Minn. 1983). See also: Blair v. Defender Services, 386 F.3d 623 (4th Cir. 2004). As stated above, there were no prior incidents between Mark Smith and a female citizen.

In this case, and as shown above, the plaintiff has shown no evidence that Mark Alan Smith was negligently hired or retained. See: *Exhibit M*. See also: *Exhibit A, pages 9, 10, and 11, lines 1-21*. As a result, the state law claims of negligent hiring and retention must be dismissed.

### IV. SHERIFF MIKE WHITE IS ENTITLED TO QUALIFIED IMMUNITY.

The plaintiff is suing Sheriff Mike White individually and in his capacity as Sheriff of Hancock County.[8] While official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent, an individual capacity suit seeks to impose personal liability upon an official for actions that he has taken under color of state law.

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

---

[8] See: Plaintiff's Amended Complaint, paragraph 8.

14

Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099 (1985); Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683 (1974). The plaintiff must show some "misuse of power, possessed by virtue of state law." United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031 (1941). However, when sued in their individual capacity, officials are protected by qualified immunity. See: Sales v. Grant, 224 F.3d 293 (4th Cir. 2000). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law". Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986). The plaintiff has developed no evidence whatsoever that the actions or inactions of Sheriff White were unreasonable or knowingly violated the law. Therefore, Sheriff White is entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). Therefore, the Court must rule on the matter of qualified immunity prior to subjecting Sheriff White to trial. "Qualified immunity in a civil rights action under § 1983 is an entitlement not to stand trial or face other burdens of litigation, and the determination as to whether a public officer acted with objective reasonableness is a question of law for the Court, accordingly, determination of qualified immunity may be made upon a motion of summary judgment and should be made as early as possible stage of litigation." Green v. City of Welch, 822 F. Supp. 1236 (S.D.W.V. 1993). Sheriff White is entitled to qualified immunity and he should not be made to continue with the burdens of litigation when the plaintiff has failed to prove any facts that would remove Sheriff White from the protection of qualified immunity.

It is well settled that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982); Prichett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). In this case, Sheriff White had absolutely no knowledge whatsoever that Mark Smith or any officers engaged in any type of alleged sexual assaults or

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

15

inappropriate sexual conduct with exotic dancers. See: *Exhibit E, page 102, lines 5-7*. In fact, Sheriff White had at least nine policies in place to keep this type of situation from occurring. See: *Exhibit G*. The plaintiff herself has testified that she has no information or knowledge that deputy sheriffs engaged in this type of activity or attempted to engage in this type of activity. See: *Exhibit C, page 63 and page 68, lines 15-18*. The plaintiff's witness and another dancer at the club, Stacy Kowalyk testified that she had no knowledge of the same or similar incidents. See: *Exhibit K, page 13, lines 5-8*. See also: *Exhibit C, page 63 and page 68, lines 15-18*. Mark Smith has testified that he has never engaged in a same or similar incident. See: *Exhibit A, page 46, lines 4-7*. Therefore, Sheriff White is entitled to qualified immunity and the individual claims against him must be dismissed.

### V. THE PLAINTIFF CANNOT SUBSTANTIATE HER CLAIM FOR THE TORT OF OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS WITH REGARD TO SHERIFF WHITE AND/OR THE COUNTY COMMISSION OF HANCOCK COUNTY.

The plaintiff asserts she was subjected to such outrageous conduct as to exceed all bounds of decency causing her extreme emotional distress.[9] The plaintiff has not provided any information or evidence to support her claim for the tort of outrage/intentional infliction of emotional distress against these defendants.

> "In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the acts of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."

Syl. Pt. 3 Travis v. Alcon Laboratories, Inc., 202 W. Va. 369, 504 S.E.2d 419 (1998); Williamson v. Harden, 214 W. Va. 77, 585 S.E.2d 369 (2003).

The Court must consider whether Sheriff White and the County Commission of Hancock

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

---

[9] See: Plaintiff's Amended Complaint, paragraph 35.

County's actions might reasonably be interpreted as outrageous. The West Virginia Supreme Court of Appeals has stated:

> "In evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination."

Hatfield v. Health Mgmt. Assocs. of West Virginia, 223 W. Va. 259, 672 S.E.2d 395, 404 (2008) citing Travis v. Alcon Laboratories, Inc., 202 W. Va. 369, 504 S.E.2d 419 (1998). "Conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean spirited, or negligent does not constitute outrageous conduct." Courtney v. Courtney, 186 W. Va. 597, 413 S.E.2d 418, 423 (1991). In this case, any conduct attributed to Sheriff White or the County Commission of Hancock County does not meet the definition of outrageous conduct. At most, in accepting as true, the plaintiff's allegations that she was subjected by Smith to extreme emotional distress that exceeded all bounds of decency, there is no conduct on the part of Sheriff White or the County Commission of Hancock County that can be described as outrageous. The Sheriff had policies in effect to control the actions of deputies. There had never been a prior similar incident. Once informed, Sheriff White immediately suspended the deputy, conducted an investigation, and recommended termination which resulted in the deputy's resignation. Therefore, the plaintiff has failed to establish the elements necessary for the claim of the tort of outrage/intentional infliction of emotional distress as to these defendants and they are entitled to summary judgment on the claim as a matter of law.

## VI. CONCLUSION

This case has been pending before this Court for almost two years. In the many months of discovery, the plaintiff has failed to establish any evidence whatsoever to substantiate her claims against Sheriff Mike White and the County Commission of Hancock County. The plaintiff cannot substantiate any 42 USCS § 1983 claim against these defendants. The plaintiff cannot substantiate her claims of negligent hiring, retention or supervision against these defendants.

LAW OFFICES OF
BAILEY & WYANT, P.L.L.C.
1219 CHAPLINE STREET
WHEELING, WV 26003

17

There is no conduct on behalf of these defendants to allow the plaintiff's claim of intentional infliction of emotional distress and/or the tort of outrage to continue. Further, Sheriff Mike White is entitled to qualified immunity. Therefore, the County Commission of Hancock County and Sheriff White's Motion for Summary Judgment must be granted.

**WHEREFORE**, defendants Hancock County Commission and Sheriff White respectfully request that their Motion for Summary Judgment be granted and for such other relief that the Court deems appropriate.

THE COUNTY COMMISSION OF
HANCOCK COUNTY, SHERIFF MIKE
WHITE, individually and in his capacity
as Sheriff of Hancock County
By Counsel

David L. Wyant, Esq.
W. Va. Bar ID # 4149
April J. Wheeler, Esq.
W. Va. Bar ID # 9348
BAILEY & WYANT, P.L.L.C.
1219 Chapline Street
Wheeling, WV 26003
Telephone: (304) 233-3100
Fax: (304) 233-0201

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

VANESSA KOWALYK,

    Plaintiff,

vs.

THE COUNTY COMMISSION OF
HANCOCK COUNTY; SHERIFF MIKE
WHITE, individually and in his capacity as
Sheriff of Hancock County; and MARK
ALAN SMITH, individually and in his
capacity as Deputy Sheriff of Hancock
County,

    Defendants.

CIVIL ACTION NO. 5:08-CV-181

## CERTIFICATE OF SERVICE

Service of the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was had upon the following by mailing a true and correct copy thereof by United States mail, postage prepaid, this 12 day of October, 2010:

Thomas D. Hall, Esq.
W. Va. Bar ID # 6602
Woomer & Hall, LLP
2945 Banksville Road, Suite 200
Pittsburgh, PA 15216

Martin P. Sheehan, Esq.
SHEEHAN & NUGENT
41 - 15th Street
Wheeling, WV 26003

                                                    _____
                                                    David L. Wyant, Esq.
                                                    W. Va. Bar ID # 4149