IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


VANESSA KOWALYK,

          Plaintiff,

v.                                        Civil Action No. 5:08CV181
                                                         (STAMP)
THE COUNTY COMMISSION OF HANCOCK COUNTY,
HANCOCK COUNTY OFFICE OF THE SHERIFF,
SHERIFF MIKE WHITE, individually and in his
capacity as Sheriff of Hancock County and
MARK ALLAN SMITH, individually and in his
capacity of Deputy Sheriff of Hancock County,

          Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT SHERIFF MIKE WHITE AND**
**THE COUNTY COMMISSION OF HANCOCK COUNTY'S**
**MOTION FOR SUMMARY JUDGMENT;**
**GRANTING DEFENDANTS' MOTIONS IN LIMINE**
**NO. 1, NO. 2, NO. 3, NO. 4, AND NO. 5;**
**AND DENYING AS MOOT DEFENDANT'S**
**MOTIONS IN LIMINE NO. 6 AND NO. 7**


I.  Procedural History

     Plaintiff Vanessa Kowalyk filed suit in this Court against

defendants Hancock County, Hancock County Office of the Sheriff,

Mike White ("White"), sheriff, in his individual and official

capacity, and Mark Alan Smith ("Smith"), deputy sheriff, in his

individual and official capacity.  The plaintiff asserts claims for

the following:  42 U.S.C. § 1983, state law assault and battery,

negligence, intentional infliction of emotional distress, negligent

infliction of emotional distress, and false imprisonment.  On April

9, 2009, this Court dismissed Hancock County and Hancock County

Office of the Sheriff.  The plaintiff then filed an amended complaint on April 21, 2009, which named the County Commission of Hancock County ("the County Commission") as an additional defendant.  On December 28, 2010, this Court issued an order confirming the pronounced ruling of the Court at a December 27, 2010 pretrial conference, which dismissed defendant Smith as to his personal liability, without prejudice to the plaintiff seeking to proceed against Smith's insurance carrier or carriers.

Defendants White and the County Commission filed a motion for summary judgment.  These defendants argue that the plaintiff has no evidence of policy or custom that caused the plaintiff's alleged constitutional violation.  They further argue that the plaintiff has failed to establish these defendants failed to train Smith which led directly to her alleged constitutional violation.  Next, they argue that they did not fail to supervise Smith that resulted in the plaintiff suffering an alleged constitutional violation.  They also contend that they did not fail to properly hire Smith which would result in the plaintiff's alleged constitutional violation.  They further argue that the plaintiff has failed to establish any evidence to support her state law claims of negligent hiring or retention.  These defendants also contend that Mike White is entitled to qualified immunity.  They further argue that the plaintiff cannot substantiate her claim for intentional infliction of emotional distress with regard to the sheriff or the commission.

The plaintiff filed a response arguing that there is evidence to support her § 1983 claims. She states that Sheriff White chose to assume older deputies like Smith were familiar with and understood existing general orders and chose to limit review to new hires only and there is no evidence that the County Commission ever questioned the sheriff's practices. As to training, the plaintiff points to the fact that Smith believed he could have sex with someone not in custody and that Smith did not know what constitutes a custodial situation. The plaintiff also states that the defendants entrusted supervisory duties to Smith and failed to provide Smith with the information he needed to properly perform those duties. She states whether a proper investigation was conducted with regard to hiring is a question of fact for the jury. She also believes qualified immunity is not appropriate here. The plaintiff argues that a reasonable person in White's position would have known that failure to determine that his deputies knew and understood that the general orders required by their jobs would lead to violations of the rights those orders were put in place to protect. She believes that reasonable minds may differ on this point and that qualified immunity is not properly disposed of by summary judgment. Finally, she states that evidence supports her intentional infliction of emotional distress claim.

The defendants filed a reply. They argue that the plaintiff has no evidence of a policy or custom that caused the violations.

The defendants argue that whether the sexual acts were consensual is not material because the plaintiff was the victim of a crime and in custody of a law enforcement officer. Smith testified he is aware it would have been against his training and a violation of general orders to have sexual conduct with the plaintiff. They argue that the plaintiff has failed to establish that these defendants failed to train Smith and that they did not fail to properly hire and retain Smith. They also argue that they did not fail to supervise Smith. They contend White is entitled to qualified immunity because he had no knowledge that Smith or any officer would engage in any type of alleged sexual assault or inappropriate sexual conduct with exotic dancers. Finally, they contend that the plaintiff cannot substantiate her state law claim for intentional infliction of emotional distress.

By letter dated December 29, 2010, this Court advised the parties of tentative rulings on the defendants' motion for summary judgment and the defendants' motions in limine.[1] This memorandum opinion and order sets forth those rulings in more detail. For the reasons set forth below, this Court finds that the defendants' motion for summary judgment must be granted because the plaintiff has failed to demonstrate a genuine issue of material fact with

---

[1]Defendants' motions in limine 1 through 5 were GRANTED by agreement at the December 27, 2010 pretrial conference. Because this Court grants the defendants' motion for summary judgment, motions in limine 6 and 7 are DENIED AS MOOT.

regard to the claims remaining against defendants White and the County Commission.   Therefore, this Court need not address the qualified immunity defense.   Further, this Court finds that plaintiff has not demonstrated a genuine issue of material fact regarding her state law claims.

## II.   <u>Facts</u>

On December 13, 2006 at 3:00 a.m., Mark Alan Smith observed a vehicle drifting over the yellow line and not maintaining a steady speed.   The plaintiff states she was swerving because of her bald tires.   Smith initiated a traffic stop and performed sobriety field tests on Vanessa Kowalyk, an exotic dancer.   She failed some tests and Smith requested that she sit in his vehicle so he could determine if she smelled of alcohol.   Smith determined that the plaintiff was not under the influence.   Smith states that he told her she was not going to be arrested, while the plaintiff contends that Smith told her she was going to jail for driving under the influence ("DUI").

At this point, the plaintiff and defendants' versions of the facts further diverge.   The defendants state that the plaintiff started to get out of Smith's car.   Smith then requested that she show him what she "showed the guys at the bar."   According to Smith, the plaintiff pulled up her shirt and at some point pulled down her pants and made a suggestion that he come to her place of employment where they could engage in sexual activity.   Smith

5

suggested that they engage in such activity then. The plaintiff left the police car, got her purse out of her vehicle, and locked her car. Smith then falsely reported to his dispatcher that he was with a disabled vehicle and that party was going to receive a ride from a third party. Smith stated that he and the plaintiff then traveled to a cemetery where Smith began to engage in oral sexual conduct with the plaintiff. The plaintiff declined to continue. He then told her that they were not going to do anything she did not want to do and he drove her back to her vehicle.

According to the plaintiff, she believed that she was going to jail for DUI. Therefore, she returned money to the glove box of her car so her family could get the vehicle after it had been impounded. Smith radioed in to his dispatcher a false story and then asked to see her breasts. She lifted her shirt. When he asked for what the guys see at the club, she suggested he come to her place of employment. He started driving and talked to the plaintiff about being charged with a DUI and asked about her son and where her son's father was. He suggested she would have a hard time supporting her son if she got a DUI. Smith went to a cemetery and told her he wanted to see her naked and continued to talk about her son and the consequences of a DUI. He got out of the car and took off his gun and walked to the passenger side and reached over her and pushed her seat back. The plaintiff testified she thought Smith was going to kill her. He pulled down her pants and engaged

in oral sex upon her.  He asked her to engage in oral sex upon him and she said no.  He drove her back to her car.[2]

The next morning, the plaintiff's mother came to her house and the two discussed what they should do.  She discussed the situation with her uncle.  Her uncle called an attorney who told her to go to the hospital immediately.  Sheriff White ordered Smith to report to the state police barracks where he was interviewed.  White took possession of Smith's weapon and placed him on administrative leave.  White then conducted an internal investigation.  White informed Smith he was going to recommend discharge for Smith and informed him of the nine policies and procedures he violated.  Smith resigned on April 26, 2007.  On February 14, 2008, Smith entered a plea of no contest to the misdemeanor offense of sexual abuse in the second degree.

### III.  Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or

_____

[2]Defendant Smith and the plaintiff's testimonies differ as to whether the sexual contact was consensual.  This dispute is not material to the defendants' motion for summary judgment because defendant Smith stated that he was aware that having sexual contact while on duty was against the department's policies.

> (B) showing that the materials cited do not
> establish the absence or presence of a genuine
> dispute, or that an adverse party cannot
> produce admissible evidence to support the
> fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718-19 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The Court must perform a threshold inquiry to determine whether a trial is needed -- whether, in other words, "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to

clarify the application of the law.") (citing <u>Stevens v. Howard D.
Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

"[T]he plain language of Rule 56(c) mandates the entry of
summary judgment, after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not
appropriate until the non-moving party has had sufficient
opportunity for discovery. See <u>Oksanen v. Page Mem'l Hosp.</u>, 912
F.2d 73, 78 (4th Cir. 1990).

On a motion for summary judgment, a court reviewing the
supported underlying facts must view all inferences in the light
most favorable to the party opposing the motion. <u>See</u> <u>Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).
Further, when evaluating an assertion of qualified immunity under
summary judgment, a court must take all facts "'in the light most
favorable to the party asserting the injury.'" <u>Clem v. Corbeau</u>,
284 F.3d 543, 550-51 (4th Cir. 2002)(quoting <u>Saucier v. Katz</u>, 533
U.S. 194, 201 (2001)). "The burden of proof and persuasion with
respect to a claim of qualified immunity is on the defendant
official." <u>Wilson v. Kittoe</u>, 337 F.3d 392, 397 (4th Cir. 2003)
(citing <u>Gomez v. Toledo</u>, 446 U.S. 635, 640-41 (1980)).

IV.  Discussion

A.  Section 1983 Claims

The plaintiff contends that the actions or inactions of the County Commission and White violated 42 U.S.C. § 1983 in their policies, procedures, practices, and customs related to the hiring, retention, training, and supervision of Smith and that White and the County Commission exhibited deliberate indifference to the right of the plaintiff not to be subjected to kidnapping, false imprisonment, sexual assault and battery.

1.  Policy or Custom

A plaintiff may directly sue a local governing body pursuant to § 1983 for constitutional violations.  Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978).  However, the plaintiff is required "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" in order to ensure "that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403-04 (1997).  An act "not formally approved by an appropriate decisionmaker," but performed pursuant to a "custom," may "subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  Id. at 404.

The plaintiff argues that White, through authority granted to him by the County Commission, establishes policies and procedures, called general orders, which are to be followed by the Sheriff's Office. The plaintiff contends that White chooses to assume that older deputies, like Smith, are familiar with and understand general orders and chooses to limit review of these general orders to new hires only. The plaintiff also states that White chooses to limit his knowledge of the extent to which the older deputies know and understand all the general orders. This Court finds that this is not a constitutional violation. Here, White determined that Smith violated at least nine policies of the Sheriff's Office. Smith not only testified that he knew that he had violated the general orders, but also signed a document stating that he recognized that he had received the general orders.

In her amended complaint, the plaintiff alleges that there is an unwritten, "well-known" custom or practice to "look the other way" when deputies use their authority to attempt to force dancers to perform sexual favors. As mentioned above, "a municipal custom may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)(citing Monell, 436 U.S. at 691)(internal citations omitted). In this case, the plaintiff has not provided any evidence of any custom of looking the other way when deputies allegedly used their

authority to attempt to force dancers to perform sexual favors. In her deposition testimony, the plaintiff admitted that she was unaware of any information that White knew that the incident would happen. She was also not aware of any other instance where Smith pulled over an exotic dancer or of any other instance where a Hancock County deputy sheriff pulled over an exotic dancer. The plaintiff further testified that she was not aware of any exotic dancers who had dated deputy sheriffs. Stacy Kowalyk, a witness for the plaintiff and the plaintiff's cousin and also an exotic dancer, testified that she was unaware of any exotic dancers who were pulled over by police officers and unaware of any information that White knew that law enforcement officers had assaulted any exotic dancers. Stacy Kowalyk further testified that she was unaware of any dancers having confrontations with deputy sheriffs. Finally, White conducted an investigation to determine if there were similar incidents occurring and discovered none. This Court finds that there is no custom "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." <u>Carter</u>, 164 F.3d at 218. Because the plaintiff presents no facts to establish that a policy or custom exists of "looking the other way," this Court must grant the defendant's motion for summary judgment on that claim.[3]

---

[3]At the December 27, 2010 pretrial conference, the plaintiff's attorney admitted that the plaintiff did not have evidence of a policy or custom that the County Commission or White violated.

2. <u>Training</u>

The plaintiff alleges that White and the County Commission failed to adequately train Smith. In a failure to train action, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). Furthermore, liability can only result where "the identified deficiency in a city's training program [is] closely related to the ultimate injury." <u>Id.</u> at 391. The rule that "a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees . . . represents a policy for which the city is responsible." <u>Id.</u> at 389. Instead, the issue "is whether that training program is adequate." <u>Id.</u> at 390. Similarly, it is not enough "to prove that an injury . . . could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" because "[s]uch a claim could be made about almost any encounter." <u>Id.</u> at 391. A "plaintiff must demonstrate specific training deficiencies and either (1) that inadequately trained employees engaged in a pattern of unconstitutional conduct, or (2) that a violation of a federal right is a 'highly predictable consequence of a failure to equip

law enforcement officers with specific tools to handle recurring situations.'" <u>Hill v. Robeson County, N.C.</u>, --- F. Supp. 2d. ----, 2010 WL 2104168, *8 (E.D.N.C. May 20, 2010)(quoting <u>Brown</u>, 520 U.S. at 407-09). "The Fourth Circuit has not analyzed what constitutes a recurring situation." <u>Id.</u> However, other circuit courts have addressed the question. The Eighth Circuit, for example, has held that there is no "patently obvious need for [a] city to specifically train officers not to rape young women." <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1077 (8th Cir. 1996); <u>see also</u> <u>Parrish v. Ball</u>, 594 F.3d 993, 999 (8th Cir. 2010)(finding there is no "obvious need to train officers not to sexually assault women"); <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1308 (10th Cir. 2008) (concluding that the sexual assault of inmates is not "a plainly obvious consequence of a deficient training program"); <u>West v. Waymire</u>, 114 F.3d 646, 650 (7th Cir. 1997) ("[I]t seems doubtful that the fact that police officers sometimes encounter teenage girls in the line of duty obligates a police department to take measures to prevent its officers from molesting these girls, on the theory that such molestation is so likely that it should be deemed foreseeable.").

In this case, Smith graduated from the West Virginia State Police Academy and received ongoing training throughout his career as a deputy sheriff. This training included a sexual assault symposium. The plaintiff "has failed to allege any pattern of

similar constitutional violations." <u>Hill</u>, 2010 WL 2104168 at *9; <u>Brown</u>, 520 U.S. at 407-08; <u>Carter</u>, 164 F.3d at 218. In addition, "this case is not the type of case where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of [Hancock County] can reasonably be said to have been deliberately indifferent to the need.'" <u>Hill</u>, 2010 WL 2104168 at *9 (quoting <u>City of Canton</u>, 489 U.S. at 390). As mentioned above, White did not commit a constitutional violation by reviewing general orders with only new hires. Again, this Court notes that Smith admitted that he knew it was against policy to have sexual contact while on duty and that White's investigation showed that no other similar incidents occurred. Even if the plaintiff could establish that the training program was in some manner deficient, the plaintiff "simply cannot demonstrate the close relationship necessary to conclude that the [county's] failure to properly train [Smith] <u>caused</u> him to rape [the plaintiff]." <u>Andrews</u>, 98 F.3d at 1077.

        3. <u>Supervision</u>

    "[A] municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory." <u>Monell</u>, 436 U.S. at 691. A defendant will be liable to a plaintiff for failure to supervise claim pursuant to § 1983 "only in those situations in which there is a history of widespread abuse." <u>Wellington v. Daniels</u>, 717 F.2d 932,

936 (4th Cir. 1983). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." Id.

In this case, the plaintiff can point to no history of widespread abuse. Smith was the supervisor of the shift when the incident occurred. Smith was the most senior officer on duty that night and had worked for over fifteen years with the sheriff's department without a similar event occurring. The plaintiff argues that because Smith knew that he was not being supervised, he was enabled to engage in sex on the job because no recording would be made of his actions. The plaintiff offers no proof for this theory. This Court agrees with the defendants that the plaintiff is asking this Court to find that if a law enforcement officer is unsupervised, a rape is foreseeable. As mentioned above, a county cannot be held liable under § 1983 under a respondeat superior theory. Monell, 436 U.S. at 691.

4. Hiring

The Supreme Court of the United States has held that

[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.

Brown, 520 U.S. at 411. In this case, Smith had previously been employed by the City of Chester, West Virginia, for approximately

16

six years as a patrolman and passed a physical and psychological examination prior to his hiring by Hancock County as a deputy sheriff. The plaintiff cannot show that the County Commission was deliberately indifferent in its hiring of Smith as a deputy sheriff.

B.    <u>Qualified Immunity Affirmative Defense</u>

White claims that he is entitled to qualified immunity. Under <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), analysis of a qualified immunity defense requires a two-part inquiry.[4] The first question is whether the facts alleged, when viewed in the light most favorable to the injured party, "show the officer's conduct violated a constitutional right." <u>Id.</u> If the facts alleged fail to make this showing, the inquiry is at an end, and the official is entitled to summary judgment. <u>Id.</u> If, however, the facts alleged do show a constitutional injury, the second question is whether the

---

[4]Prior to the United States Supreme Court's decision in <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808 (2009), lower federal courts were required to follow a rigid two prong test for determining the existence of qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Under that test, a court first looks to whether the officer's conduct violated a constitutional right, followed by an analysis of whether the constitutional right was clearly established at the time of the violation. <u>Id.</u> The <u>Pearson</u> court found shortcomings in the <u>Saucier</u> analysis. <u>Pearson</u>, 129 S. Ct. at 818-21. "Adherence to <u>Saucier</u>'s two step protocol departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable." <u>Id.</u> at 821 (internal quotations omitted). The Supreme Court, though, found that the <u>Saucier</u> procedure was often advantageous, and left open to district courts the "order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case."

constitutional right was clearly established at the time of the violation. Id. Qualified immunity is abrogated only upon a showing that the officer's conduct violated a constitutional right and that such right was clearly established at the time the conduct occurred. Id. Because this Court has found that White did not commit any constitutional violation, White does not need to defend the action and the inquiry is at an end. Accordingly, White is entitled to summary judgment.

C.   State Law Claims

    1.   Negligent Training, Hiring, and Supervision

In West Virginia, to establish a cause of action for negligent hiring and retention, a plaintiff must show that the County Commission, when it hired or retained Smith, conducted "a reasonable investigation into the employer's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee." McCormick v. W. Va. Dep't of Public Safety, 503 S.E.2d 502, 506, n.5 (W. Va. 1998)(per curiam)(internal citations omitted). This Court focuses on whether the County Commission and White "should have reasonably foreseen the risk caused by hiring or retaining an unfit person." Id. The West Virginia Supreme Court of Appeals "has not found state authority for a stand-alone claim for negligent training or supervision" and the parties did not brief those claims. Webb v.

18

<u>Raleigh County Sheriff's Dep't</u>, 2010 WL 5441682, *15 (S.D. W. Va. Dec. 28, 2010).

Here, the plaintiff argues that while Smith graduated from the police academy, passed a civil service examination, and underwent physical and psychological evaluations, the psychological examination was not thorough enough. This Court finds that the defendants did not negligently hire or retain Smith in violation of West Virginia law. As the defendants have shown, Smith did have a psychological evaluation prior to his hiring. After he was hired, the plaintiff cannot point to any evidence showing that White or the County Commission should have been aware that Smith was a risk to the community.

    2.  <u>Tort of Outrage</u>

In her amended complaint, the plaintiff alleges state law claims for both negligent and intentional infliction of emotional distress. In West Virginia:

> [a] plaintiff's right to recover for the negligent infliction of emotional distress, after witnessing a person closely related to the plaintiff suffer critical injury or death as a result of defendant's negligent conduct, is premised upon the traditional negligence of foreseeability . . . . In determining whether the serious emotional injury suffered by a plaintiff in a negligent infliction of emotional distress action was reasonably foreseeable to the defendant, the following factors must be evaluated: (1) whether the plaintiff was closely related to the injury victim; (2) whether the plaintiff was located at the scene of the accident and is aware that it is causing injury to the victim; (3) whether the victim is critically injured or killed; and (4) whether the plaintiff suffers <u>serious</u> emotional distress.

19

Syl. pt. 2, <u>Heldreth v. Marrs</u>, 425 S.E.2d 157 (W. Va. 1992). The parties do not brief the issue of negligent infliction of emotional distress. This Court finds that the plaintiff fails to make out a prima facie case for negligent infliction of emotional distress. The tort of negligent infliction of emotional distress involves "witnessing a person closely related to the plaintiff suffer critical injury or death as a result of defendant's negligent conduct." <u>Id.</u> Here, the plaintiff did not witness a person closely related to her suffer critical injury or death. Thus, the plaintiff fails to state a claim for negligent infliction of emotional distress.

To prevail on a claim for intentional infliction of emotional distress/tort of outrage, a plaintiff must show the following four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

<u>Travis v. Alcon Laboratories, Inc.</u>, 504 S.E.2d 419, 425 (W. Va. 1998).

The plaintiff argues that the actions or inactions of White and the County Commission led directly to and enabled the outrageous conduct of Smith. The first prong requires that the

plaintiff show atrocious conduct; it must be more than unkind or unfair. Id. Here, taking the plaintiff's facts as true, Smith's conduct was certainly atrocious. However, the plaintiff attempts to impute Smith's conduct to White and the County Commission, which she cannot do as White and the County Commission were not negligent in hiring, supervision, or failing to fire the employee. Furthermore, White and the County Commission did not intentionally inflict emotional distress or act recklessly as this Court has already concluded that White and the County Commission had no reason to know that Smith would engage in sexual activity on the job.

## V. Conclusion

For the reasons set forth above, and viewing the facts in the light most favorable to the plaintiff, this Court finds that the plaintiff has not established a genuine issue of material fact concerning her allegations of civil rights violations by White and the County Commission and that she has failed to establish a genuine issue of material fact as to her state law claims. Accordingly, the defendants' motion for summary judgment is GRANTED. Defendants' motions in limine 1 through 5 were GRANTED by agreement at the December 27, 2010 pretrial conference. Because this Court grants the defendants' motion for summary judgment, motions in limine 6 and 7 are DENIED AS MOOT. Accordingly, it is

ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    January 6, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE